# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| JACQUELINE DELORIS MCKELLER, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. 7:14-cv-01280-JEO |
| v. | ) ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Jacqueline Deloris McKeller brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and Supplemental Security Income ("SSI"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 9). *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

In January 2011, McKeller filed applications for disability insurance benefits and SSI, alleging disability beginning December 10, 2010. (R. 180-88).[2] Her applications were denied by the State Agency. (R. 112-13). She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 1, 2012. (R. 60-104). McKeller, her counsel, and a vocational expert ("VE") attended the hearing. (R. 60). The ALJ issued a decision on November 16, 2012, finding that McKeller was not entitled to benefits. (R. 38-54).

McKeller requested the Appeals Council to review the ALJ's decision. (R. 30). The Appeals Council denied McKeller's request for review on May 7, 2014. (R. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. McKeller then filed this action for judicial review under 42 U.S.C. § 405(g). (Doc. 1).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

---

[2] References herein to "R.___" are to the page number of the administrative record, which is encompassed within Docs. 6-1 through 6-17.

standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform [her] past relevant work, in light of [her] residual functional capacity; and (5) can make an adjustment to other work, in light of [her] residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[3] (citing 20 C.F.R. § 404.1520(a)(4)). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a

---

[3]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*; *Evans*, 551 F. App'x at 524.

## IV. FINDINGS OF THE ALJ

McKeller was 36 years old at the time of her hearing before the ALJ. (R. 66). She has a high school equivalency degree and past relevant work experience as a server and waitress, counter attendant, fast food worker, housekeeper, and kitchen helper. (R. 67, 90-91). She alleges in her disability report that she has been unable to work since December 10, 2010, due to carpal tunnel syndrome in both wrists and grogginess from her medications. (R. 232).

The ALJ found that McKeller had severe impairments of carpal tunnel syndrome and arthritis, but that her impairments, alone and in combination, did not meet or medically equal the severity of one of the listed impairments in the Listings.[4]  (R. 43, 46).

---

[4]The Listings are located at 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ then found that McKeller had the residual functional capacity[5] ("RFC") to perform light work, subject to the following limitations: she can push/pull frequently with the right upper extremity, constantly with the left upper extremity, and constantly with the lower extremities bilaterally; she can frequently climb ramps and stairs, but never climb ropes, ladders, or scaffolds; she can frequently balance, stoop, kneel, and crouch, but can only occasionally crawl; she can reach, handle, finger, and feel frequently with the right upper extremity and constantly with the left upper extremity; and she can never work in environments with exposure to hazardous conditions such as unprotected heights and moving machinery.  (R. 46).

Premised on the testimony of the VE, the ALJ determined that McKeller could perform her past relevant work as a server, counter attendant, fast food worker, and housekeeper.  (R. 52, 90-92).  Alternatively, the ALJ found that there are other jobs in the national economy that McKeller is capable of performing.  (R. 52-53, 92-93).  The ALJ thus concluded that McKeller was not disabled.  (R. 53-54).

---

[5] Residual functional capacity is the most a claimant can do despite her impairment(s). *See* 20 C.F.R. §404.1545(a)(1).

## V.  DISCUSSION

McKeller argues that the Commissioner's decision is not supported by substantial evidence and should be reversed or remanded for two reasons.  First, McKeller argues that the ALJ failed to give adequate weight to the opinion of one of her treating physicians, Dr. Cynthia Mouton, who stated in a treatment note that McKeller had many reasons to be depressed and is disabled due to carpal tunnel syndrome.  (Doc. 10 at 9-10).  Second, McKeller argues that the ALJ failed to properly evaluate the opinions of Dr. John Goff, a consultative psychologist who examined her in April 2012.  (Doc. 10 at 10-12).  The Commissioner responds that the ALJ properly considered the opinions of the medical sources who treated and examined McKeller and that substantial evidence supports the ALJ's decision.  (Doc. 11 at 4-16).

**A.    Dr. Mouton's Opinion**

Dr. Mouton examined McKeller on November 23, 2011.[6]  (R. 705-708).  Dr. Mouton acknowledged in her treatment notes that "we do not have records on any of [the] reports [McKeller] has mentioned" regarding surgery on her right carpal tunnel in April 2011 and the problems she allegedly continued to have

---

[6]Dr. Mouton also examined McKeller on July 29, 2011. (R. 365-69).  McKeller makes no contention that the ALJ failed to give proper consideration to Dr. Mouton's assessment from that examination.

7

following the surgery. (R. 705). Dr. Mouton's medical findings indicated that McKeller's right hand had "weakness" and "moderately reduced" range of motion and that her left hand had "weakness" and "decreased" range of motion. (R. 707). Dr. Mouton noted that McKeller's carpal tunnel syndrome had not resolved, that she continued to have pain, that she had a "knot" on her right wrist, and that she was resistant to the non-medical and surgical options presented to her. (R. 708). Dr. Mouton ordered an x-ray of McKeller's right wrist, which revealed signs of early osteoarthritis in the right hand and wrist but no fracture or dislocation. (R. 708-709). In a separate section of her treatment notes discussing depression, Dr. Mouton commented: "[McKeller] has many reasons to be depressed. She does not admit to depression, but she is disabled due to CTS [carpal tunnel syndrome] and has unsuccessful treatment and has not worked since April of 2011." (R. 708).

"Absent good cause, an ALJ is to give the medical opinions of treating physicians substantial or considerable weight."[7] *Winschel v. Comm'r of Soc. Sec.*,

---

[7] The court notes that Dr. Mouton examined McKeller on only two occasions, in July and November 2011. (R. 365-69, 705-08). Because it appears that Dr. Mouton may not have had an ongoing treatment relationship with McKeller, it is questionable whether she is a "treating physician" with respect to McKeller. *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)."). Nonetheless, for purposes of this opinion the court will assume that Dr. Mouton is a treating physician.

631 F.3d 1176, 1179 (11th Cir. 20011) (citations and internal quotation marks omitted).Crawford *v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation and internal quotation marks omitted).   Here, the ALJ determined that Dr. Mouton's opinion was entitled to "little weight."  (R. 51).  McKeller challenges this determination, arguing that "[i]f given proper weight, Dr. Mouton's opinion that [she] is disabled due to her carpal tunnel syndrome and depression would render [her] incapable of performing any work-related activities."[8]  (Doc. 10 at 10).  She contends that because the ALJ failed to accord "adequate weight" to Dr. Mouton's opinion, the ALJ's decision is not based upon substantial evidence.  (*Id.*)  The court disagrees.

First, as the ALJ noted in her decision, an opinion from a physician that a claimant is "disabled" is not a medical opinion; it is an opinion on an issue reserved to the Commissioner.  (R. 51); *see* 20 C.F.R. §§ 404.1527(d), 416.927(d); *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) ("[T]he ALJ, not a claimant's physician, is responsible for determining whether a claimant is statutorily disabled.").  Such an opinion is not entitled to "any special significance."  20 C.F.R. §§ 404.1527(d), 416.927(d); *see* Social Security Ruling

---

[8]McKeller's characterization of Dr. Mouton's opinion is not accurate.  Dr. Mouton did not state that McKeller is disabled due to both carpal tunnel syndrome and depression, but only due to carpal tunnel syndrome.  (*See* R. 708).

(SSR) 96-5p, 1996 WL 374183, *5 (July 2, 1996) ("Medical sources often offer opinions about whether an individual who has applied for ... disability benefits is 'disabled' or 'unable to work,' or make similar statements or opinions. ... Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."). Therefore, as the ALJ correctly observed, Dr. Mouton's statement that McKeller is "disabled" was not entitled to any special significance.

Second, "[d]isability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005); *see* 42 U.S.C. § 423(d)(1)(A) ("The term 'disability' means inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment...."). Here, Dr. Mouton stated that McKeller is disabled due to carpal tunnel syndrome, but did not explain how the carpal tunnel syndrome affects or limits McKeller's ability to work. In fact, nowhere in Dr. Mouton's treatment notes did she offer any opinion on what McKeller can and cannot in light of her carpal tunnel syndrome. Dr. Mouton's mere diagnosis that McKeller suffers from carpal tunnel syndrome, without any corresponding assessment of how the impairment impacts her ability to work, is insufficient to establish that McKeller is

10

disabled.

Third, Dr. Mouton provided no explanation for her statement that McKeller is disabled due to carpal tunnel syndrome and failed to cite the medical evidence supporting her statement. "A treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation and internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Here, as noted, Dr. Mouton made the conclusory statement that McKeller is "disabled due to CTS" in her comments on why McKeller had reasons to be depressed, not in her separate comments on McKeller's carpal tunnel syndrome. (R. 707-08). Nowhere in her notes on McKeller's carpal tunnel syndrome did Dr. Mouton opine that McKeller is disabled from that ailment or unable to perform any work-related activities. Moreover, Dr. Mouton made the statement that McKeller is "disabled due to CTS" without any further explanation. She did not explain how her medical findings established that McKeller is disabled, particularly her findings that McKeller had

11

"weakness" and "moderately reduced" range of motion in her right hand and "weakness" and "decreased" range of motion in her left hand. (R. 707). Dr. Mouton also failed to explain how McKeller's "resistan[ce] to non-medical or surgical options presented" impacted her opinion. Given the absence of any explanation for her statement that McKeller is disabled due to carpal tunnel syndrome, and given that Dr. Mouton made the statement in the context of her comments on McKeller's depression, the ALJ was more than warranted in discounting Dr. Mouton's opinion.

Fourth, an ALJ has good cause for discounting a treating physician's opinion when the opinion is not bolstered by the evidence or when the evidence supports a contrary finding. *Eyre*, 586 F. App'x at 523; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Dr. Mouton's statement that McKeller is disabled due to carpal tunnel syndrome is not bolstered by the evidence in the record, which the ALJ thoroughly discussed in her decision. (R. 47-52). Rather, the evidence, including Dr. Mouton's own medical findings, supports the contrary finding made by the ALJ. As the ALJ noted, neither Dr. Bryan Givhan, McKeller's neorosurgeon, nor Dr. Thomas Patton, McKeller's neurologist, placed any restrictions on McKeller's ability to work. (R. 51). As the ALJ further noted:

> While the claimant has continued to report that her carpal tunnel syndrome remains symptomatic despite her surgery and post operative physical therapy, treatment compliance has been an issue. Office treatment notes from Dr. Thomas Patton ... indicated that the claimant was not taking her carpal tunnel medication regularly or wearing her wrist splint as prescribed. Dr. Bryan Givhan ... also noted the claimant's continued report of pain and indicated he was not sure what was going on with her. Therefore, he ordered a new series of electromyography and nerve conduction studies which showed mild to moderate carpal tunnel syndrome on the right hand and mild carpal tunnel syndrome on the [left].
>
> In September and October 2011, the dosages of the claimant's carpal tunnel medication were increased. In November 2011, the claimant presented to a treating physician [Dr. Mouton] with persistent complaints of right carpal tunnel symptoms. However, with the exception of only moderate weakness of the right hand and decreased range of motion of the left hand, the claimant's physical examination was within normal limits. X-rays were performed and showed only early osteoarthritis of the right hand. Dr. Cynthia Mouton, M.D., treated the claimant on only one occasion in November 2011.[9] She noted continuous treatment non-compliance as the claimant reported not wearing braces/splints as prescribed. She further note[d] that the claimant was resistant to any non-medical or surgical options presented; including additional physical therapy and alternative therapy such as yoga.
>
> Notably, the claimant did not seek treatment again for carpal tunnel problems until June 2012, at which time she presented for emergency room treatment with complaints of wrist pain. However, she reported her wrist pain was only level 2 in severity, indicating only mild pain. Physical and neurological examinations of the hands and upper extremities bilaterally were completely within normal limits and showed no evidence of tenderness, sensory or motor deficits, or

---

[9] As previously noted, the record reflects that Dr. Mouton also saw McKeller in July 2011. (R. 365-69).

> vascular compromise. The fact that the claimant was repeatedly non-compliant with her treatment, refused to consider any other form of treatment and went over 6 months without seeking treatment for her carpal tunnel suggests that her carpal tunnel symptoms were not as debilitating as alleged.

(R. 48 (exhibit citations omitted)).

For all of the foregoing reasons, the ALJ had good cause to discount Dr. Mouton's opinion and to give the opinion little weight. Substantial evidence supports the ALJ's decision.

### B.    Dr. Goff's Opinions

Dr. Goff, a consultative psychologist, examined McKeller on April 6, 2102. (R. 695-700). Dr. Goff determined that McKeller was "functioning within the borderline to low average range of psychometric intelligence"; that she was "functionally literate"; that she was "very suspicious and paranoid and [that] there may have been a decompensation in the past"; and that her "verbal memory appears to be relatively poor." (R. 700). His diagnosis included personality disorder not otherwise specified, with borderline and paranoid features. (*Id.*) He commented that McKeller's personality disorder "seems to be the most obvious impediment to vocational activity in general."[10]

---

[10] Dr. Goff also commented that McKeller "has impediments to any sort of vocational activity requiring manual skills or manual dexterity because of [her] carpal tunnel symptoms," but he conceded that McKeller's problems with her hands "do not lend themselves particularly well to psychological diagnoses." (R. 700).

Dr. Goff also completed a Medical Source Statement (Mental) on McKeller. (R. 701-03). Among other assessments, Dr. Goff determined that McKeller has a "marked" degree of impairment in her ability to interact with the general public; an "extreme" degree of impairment in her ability to get along with coworkers or peers; an "extreme" degree of impairment in her ability to maintain attention and concentration for extended periods; a "marked" degree of impairment in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; a "marked" degree of impairment in her ability to make simple work-related decisions; a "marked" degree of impairment in her ability to respond appropriately to supervision; and an "extreme" degree of impairment in her ability to respond to normal work pressures." (*Id.*) At the same time, he determined that McKeller has only a "mild" degree of impairment in her ability to ask simple questions or request assistance; a "mild" degree of impairment in her ability to understand, remember, and carry out simple instructions and a "moderate" degree of impairment in her ability to understand, remember, and carry out complex instructions and repetitive tasks; a "mild" degree of impairment in her ability to sustain a routine without special supervision; and a "mild" degree of impairment in her ability to respond appropriately to changes in the work setting. (*Id.*)

15

Because Dr. Goff was not one of McKeller's treating medical sources and examined McKeller only once, his opinions were not entitled to any deference. *See Eyre*, 586 F. App'x at 523 ("The ALJ owes no deference to the opinion of a physician who conducted a single examination: as such a physician is not a treating physician."). The ALJ "carefully considered but placed only minimal weight" on Dr. Goff's opinions, concluding that they were "wholly inconsistent with the evidence when considered in its entirety." (R. 44). McKeller argues that "the ALJ's conclusions do not withstand scrutiny; there are indications of mental impairment in the evidence of record, including the opinion of ... Dr. Mouton, who concluded that [McKeller] was disabled due to depression." (Doc. 10 at 12). McKeller contends that "for failing to properly evaluate and state the weight given to Dr. Goff's opinion[s], the ALJ's decision cannot be based upon substantial evidence." (Doc. 10 at 13). Again, McKeller's contention lacks merit.

The court first notes that McKeller did not allege that her ability to work was limited by any mental impairment in her disability report. (*See* R. 232). In addition, as the ALJ observed in her decision, "no allegations of psychiatric and/or psychological symptoms were ... alleged by the claimant at the hearing until [her] attorney posed a hypothetical question to the vocational expert based on Dr. Goff's report." (R. 44). Indeed, when the ALJ completed her examination of

McKeller at the hearing, the ALJ specifically asked McKeller whether there were "[a]ny other problems" that were keeping her from working apart from the physical problems she had testified to, and McKeller responded, "That would be it." (R. 89-90).

Moreover, although McKeller asserts that there are "indications of mental impairment in the evidence of record," the only evidence she cites is Dr. Mouton's statement that she has "many reasons to be depressed," which McKeller mischaracterizes as a conclusion that she is "disabled due to depression." (Doc. 10 at 12). As previously noted by the court, Dr. Mouton never stated that McKeller is disabled due to depression, and McKeller herself denied being depressed. (R. 706, 708).

Finally, the ALJ provided a thorough discussion of the reasons why she accorded Dr. Goff's opinions minimal weight:

> **None** of the symptoms or diagnoses set out in Dr. Goff's report have ever been reported or noted by any of the claimant's medical providers. In addition, the claimant's mental status examinations by all treating sources have always been within normal limits. ... [Dr. Goff] noted the claimant would have difficulty with any type of instructions, simple or complex but in her Function Report, the claimant indicated having no problems ... completing task[s] or following written or oral instructions. Dr. Goff indicated the claimant exhibited problems with memory but during the clinical interview, she was able to provide detailed and accurate background data regarding her family, work, school and medical history. The other documentary evidence contains no allegations of a disabling mental

> impairment by the claimant. Indeed, when specifically asked about depression by Dr. Cynthia Mouton, M.D., in November 2011, the claimant denied any depression. ... It is of note that the claimant has never required ongoing psychotropic pharmacology for treatment of a mental impairment, she has no history of mental health treatment by a psychiatrist or a mental health center and has never required emergency room treatment or a hospitalization for a debilitating mental disorder.
>
> The undersigned is of the opinion that the evidence fails to show medical signs or laboratory findings sufficient to establish that brief reactive psychosis, impulse control disorder or personalty disorder with borderline and paranoid features are even medically determinable mental impairments. However, assuming arguendo that [they] are medically determinable mental impairments, the documentary evidence as a whole fails to establish that the claimant has any work-related limitations arising from these impairments.

(R. 44-45 (exhibit citation omitted)).[11] As the above discussion reflects, the ALJ's determination that Dr. Goff's opinions were entitled to only minimal weight is supported by more than substantial evidence.

## VI. CONCLUSION

The Commissioner determined that McKeller was not disabled under the Social Security Act. For the reasons set forth above, the undersigned concludes that the Commissioner's decision is due to be **AFFIRMED**.

---

[11]The ALJ also stated that Dr. Goff opined that McKeller was "illiterate" (R. 44), but that is not correct. Dr. Goff determined that McKeller was "functionally literate." (R. 700).

**DONE,** this the 14th day of August, 2015.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge